## SUPREME COURT.

GEORGE S. TUCKERMAN, receiver, &c. agt. MORGAN L. BROWN.

Before a *mutual insurance company* was organized, an agent of certain persons who were afterwards elected directors, called upon the defendant and desired him to give his note to be used as a part of the original capital stock, and agreed, by authority from his principals, that after the company was organized and a sufficient amount of subsequent or guaranty notes taken, the note should be reduced to the amount of an ordinary guaranty note, and should not be assessed.

Defendant gave his note for $1,000, and signed an application to be organized for insurance to the amount of $1,000. The note was laid before and passed upon by the commissioners as a part of the capital stock of the company. Soon after, three of the executive committee indorsed upon the note, and signed a memorandum, that the note was reduced to $50, and at the expiration of the defendant's policy it was given up to him,

*Held,* That the agreement and subsequent surrender of the note under it were *void,* and the receiver of the company could recover on the note. Such an agreement and surrender by a company formally organized, would be a fraud upon the law and the public, and void.

*Onondaga General Term, April,* 1862.

MULLIN, MORGAN and BACON, *Justices.*

THIS was an action brought by the plaintiff as receiver of the New York Central Insurance Company, upon a note for $1,000, given by the defendant to be used as a part of the $100,000 original capital stock of that company. The answer admitted the making of the note. The note was not dated, but was in fact given February 15, 1851, and an application at the same time made to the company, to be organized, for insurance to the amount of the note, although a policy was not issued until May 2d, 1851, after the company had become fully incorporated. The commissioners to pass upon the capital stock were appointed by the comptroller, March 22d, 1851. They met and passed upon the capital stock notes, April 3d, 1851. The company was fully incorporated by the filing of a copy of the charter in the Otsego county clerk's office April 15th, 1851.

The undisputed evidence showed that on the 15th day

of February, 1851, (before the company was organized,) one J. C. Munson, who had been employed by Messrs. Olcott and Hammond, who were afterwards elected two of the directors, went to defendant and desired him to give his note to start the company and get organized, and Munson stated or agreed, by authority from Olcott and Hammond, that after the company was organized and a sufficient amount of subsequent or guaranty notes taken, the note should be reduced to the amount of an ordinary guaranty note, and that the note should not be assessed.   The commissioners appointed by the comptroller met April 3d, 1851, and passed upon the capital stock notes, including the note in suit, which they delivered to the secretary of the company.   On the 16th day of January, 1852, three of the executive committee indorsed upon the note and signed this memorandum :  " The within note is reduced to $50 by order of the executive committee"; and May 2d, 1852, at the expiration of one year from the date of defendant's policy, the note was returned to defendant by mail ; no assessment being then made upon it, and he paying nothing upon or by reason of it, or his insurance for one year, except the $3.50 which he paid at the time of signing the application.

On the 22d February, 1856, plaintiff, in an action in the supreme court, was appointed receiver of the effects of the company, and June 20, 1856, by leave of the court, filed the proper bond *nunc pro tunc.*   On the trial the court held " That the company had no right to reduce the amount of the note, or surrender it, and that, notwithstanding the surrender and giving up of the note, in pursuance of the agreement, while the company was solvent and doing business, the receiver had a right to treat it as void, and could maintain an action upon the note."   A verdict was directed for plaintiff for the amount of the note, and the case came on to be heard at general term in the first instance.

Tuckerman agt. Brown.

L. I. BURDITT, *for defendant.*

I. The reduction and subsequent cancelling and giving up of the note by the company, in pursuance of the agreement and condition on which the note was given and policy taken, is valid and binding as between the company and defendant. (*Bank of Lyons* agt. *Demmon, Lalor's Supplement to Hill & Denio R.*, 398; *cases cited on p.* 405; *Emmett, receiver* agt. *Reed*, 4 *Seld.*, 312; *Hyde, receiver* agt. *Lynde*, 4 *Coms.*, 387; *Curtiss and others* agt. *Leavitt*, 15 *N. Y. R.*, 9 *on p.* 47.)

The plaintiff as receiver has no greater rights than the company. (*See cases above cited; 9 Paige*, 410.)

Neither the company nor the receiver can repudiate an executed agreement after receiving the benefit thereof, although it may have been made and executed in violation of the statute. Neither can the company nor the receiver avail itself or himself of the fraudulent or illegal acts of the company as a means of relief. The agreement being executed, must stand, and the persons injured thereby, if any, must look to the wrong-doers for redress. Such has heretofore been, now is, and I trust will hereafter be, the law of the land. (*See cases above cited; also, Gates* agt. *Foote*, 12 *John. R.*, 1, *and cases cited.*)

The parol agreement made at the time the note was executed, qualified the promise to pay in the note, and rendered it a conditional promise only. (*Emmett, receiver* agt. *Reed, above cited.*)

The ruling, therefore, of the court is erroneous.

II. The plaintiff was not duly appointed receiver. The petition is signed by the attorney, and not by the party. (*Bangs, receiver* agt. *McIntosh*, 23 *Barb.*, 591.)

COUNTRYMAN & MOAK, *for plaintiff.*

I. Notes in the form of that in suit are a sufficient compliance with the statute in regard to capital stock notes,

and may be used as such. ( *White* agt. *Foster*, 18 *How. Pr. R.*, 151, *court of appeals;* *White* agt. *Haight*, 16 *N. Y. R.*, 310 ; *Hart* agt. *Achilles*, 28 *Barb.*, 577 ; *Hill* agt. *Reed*, 16 *Barb.*, 280 ; *Bell* agt. *Shibley*, 33 *Barb.*, 610.)

II. The note being a capital stock note was payable absolutely and at all events. It could be collected although no loss had ever occurred. ( *White* agt. *Haight*, 16 *N. Y. R.*, 310–321; *Bell* agt. *McElwain*, 18 *How. Pr. R.*, 150, *court of appeals; White* agt. *Foster*, 18 *How. Pr. R.*, 151, *court of appeals; Tuckerman* agt. *Brown*, 11 *Abb. R.*, 394 ; *Hart* agt. *Achilles*, 28 *Barb.*, 577,) And this though defendant never had a policy. ( *White* agt. *Haight*, 16 *N. Y. R.*, 323.)

These notes were the capital stock of the corporation, and the makers were the stockholders. Stockholders have always been held liable to pay in the amount of their stock though it be not required to pay debts. But here, in a direct proceeding against the corporation, and of which defendant is a stockholder, it has been adjudicated that the corporation is insolvent. The adjudication of that fact is as binding upon the defendant as if he had been personally a party to the action. Can it be successfully contended that a stockholder is not liable to pay in the amount of his subscription to the capital stock when it is required to pay the debts of the corporation ?

The receiver represents the company, the creditor in whose action he was appointed, and all other creditors of the company. He is not merely the representative of the company. He is the officer of the court in its behalf to collect the property and distribute it equally among the creditors. (*Porter* agt. *Williams*, 5 *Seld.*, 142 ; *Talmadge* agt. *Pell*, 3 *Seld.*, 328 ; *Gillett* agt. *Phillips*, 3 *Kern.*, 114.)

And hence in *Tuckerman* agt. *Brown*, (11 *Abb.*, 394,) the court, speaking of notes like that in suit, quoting the language of the court of appeals, ( *White* agt. *Haight*, 16 *N. Y. R.*, 321,) says : " They are to be considered as capital.

They are to be valid, that is, operative of themselves, and not on the happening of another event, such as the occurrence of losses." Again, (11 *Abb.*, *p.* 395,) " The corporation having been declared insolvent, and a receiver appointed, he was entitled to collect the note for the payment of the debts." Again, (*p.* 397,) " it matters not whether the company was solvent when the note was cancelled, nor whether it had remaining a capital of $100,000."

III. The agreement given to defendant by Munson is no defence to this action. That agreement was given Feb. 15th, 1851. The commissioners were not appointed by the comptroller until the 22d day of March, 1851, and the company was not incorporated until April 15, 1851. The company was not incorporated at the time the agreement was given, and could make no agreement. Neither could Olcott and Hammond, who were simply two individuals endeavoring to obtain an incorporation, bind the corporation to be formed.

But had the agreement been made by the company, it would have been invalid. Can individuals give their notes to the amount of $100,000 ; allow them to be passed upon as capital stock, and hold agreements in their pockets which render those notes worthless ? The statute prescribes what the liability of the makers shall be, and such an agreement being clearly contrary to it, is void. (*Tuckerman* agt. *Brown,* 11 *Abb.*, 389.)

IV. The reduction of the note and its surrender were void as against the plaintiff. An agreement that after the note was passed upon as a part of the original capital stock, it should be reduced from $1,000 to $50, would be illegal. It would be a fraud upon the law, the public, and others who gave their notes to be used as capital stock, supposing defendant was in reality liable with them to the amount of $1,000, and bound to contribute in that proportion. If an agreement so to do would be void, the execution of it would be also illegal. These notes cannot be

surrendered or in any manner frittered away. The law looks at the substance of transactions, and will not allow an evasion of its provisions, no matter how specious the cover. This has been expressly held by the general term in the sixth district. *Tuckerman* agt. *Brown*, 11 *Abb.*, 389; 2 *R. S.*, 5th ed., 517, § 1; *id.*, 526, § 51; *see also*, 9 *Paige Ch. R.*, 152; 3 *Edw. Ch. R.*, 215; 16 *N. Y. R.*, 323.)

1. When the note was given up defendant paid nothing, nor was there any computation or attempt to fix upon his proportion of the losses. The surrender, without consideration was void. (*Brower* agt. *Appleby*, 1 *Sand. S. C. R.*, 170, *affirmed by the court of appeals; see* 4 *Sand. Ch. R.*, 581, *note.*)

2. There was no evidence that the reduction or surrender of the note by the executive committee was pursuant to a resolution of the directors. But had such a resolution been passed it would have been void as to the plaintiff.

" A valid note given for the security of dealers under the provisions of the mutual insurance charters, cannot be given up to the maker without consideration by the board of trustees of the company, and if so given up, a receiver of the company's effects may recover it from the maker." (*Brower* agt. *Hill*, 1 *Sand. S. C. R.*, 629–648; *Tuckerman* agt. *Brown*, 11 *Abb. R.*, 395–6; *Sagory* agt. *Dubois*, 3 *Sand. Ch. R.*, 466–7.)

In *Tuckerman* agt. *Brown*, (11 *Abb.*, 391,) the original capital stock note had been given up and a new note for more than the usual amount of premium given, and an assessment upon that had been paid, yet the court held the receiver could recover upon the original note.

V. The reduction and surrender of the note being a fraud upon creditors and other stockholders, plaintiff as receiver can treat them as void and recover upon it. (*Porter* agt. *Williams*, 5 *Seld.*, 142; *Talmadge* agt. *Pell*, 3 *Seld.*, 329; *Gillett* agt. *Phillips*, 3 *Kern.*, 114.)

It is expressly provided " that any executor, administra-

tor, receiver, assignee, or other trustee of an estate, or the property and effects of an insolvent estate, corporation, association, partnership or individual, may for the benefit of creditors or others interested in the estate or property so held in trust, disaffirm, treat as void, and resist all acts done, transfers and agreements made, in fraud of the rights of any creditor, including themselves and others, interested in any estate or property held by or of right belonging to any such trustee or estate." (*Laws* 1858, *chap*. 314, *page* 506, § 1.)

The case of *Hyde, receiver* agt. *Lynde*, (4 *Coms*., 387,) is not like the one at bar.

*a.* That was an action upon a subsequent or guaranty note given after the organization of the company. It never formed a portion of the original capital stock of the company.

*b.* The charter of the company in that case authorized the surrender of such notes upon payment of the proper proportion of all losses and expenses in proportion of the deposit note, (4 *Coms*., 388.) In that case the secretary testified (*p*. 389) that he supposed defendant paid all that was due, and the court holds that it was honestly given up under the supposition that all had been paid which could be demanded upon it.

*c.* In that case the surrender of the policy (*p*. 388) furnished a sufficient consideration for the surrender of the note.

*d.* That case holds nothing more than that the receiver cannot disaffirm the lawful acts of the corporation, not that if the transaction be fraudulent in law as to creditors, dealers, and other stockholders, he cannot disaffirm it. It is true there is such a *dictum* by BRONSON, Ch. J., but he expressly says, (*p*. 393): " It is not necessary, however, to decide that question in this case, for there is no proof that the settlement was made with intent to defraud any one." Here the act itself—the abstraction of the capital stock—

shows an intent to defraud dealers, creditors, and other stockholders. All the recent decisions of the court of appeals are contrary to this *dictum.* (3 *Seld.,* 329 ; 5 *id.,* 142 ; 3 *Kern.,* 329.) So also this court, (11 *Abb.,* 389.) The statute of 1858 was passed to settle this question.

In *Emmett* agt. *Reed,* (4 *Sand.,* 229 ; *and* 4 *Seld.,* 312,) the note had been paid in full by premiums paid in upon insurances by the maker and others whom he had influenced to insure in the company. The premiums had been by agreement applied on the note. The company in that case was not organized under the act of 1849, but the note by the charter was given for advance premiums.

It is true that in the fourth district, the court does say, (*Bell* agt. *Shibley,* 33 *Barb.,* 614,) quoting the *dictum* of BRONSON, J., in *Hyde* agt. *Lynde,* that the receiver takes the place of the company, and stands as its representative. The later cases by the court of appeals, and the statute of 1858, are ignored. The case simply holds that the company never had a right to treat the note as a capital stock note, for the reason that it was not given to be used as one, and therefore the receiver could not recover upon it as such. It is unnecessary here to determine whether persons can give their notes and put it in the power of those to whom they are intrusted to practice a fraud upon dealers and the public, by presenting it to the commissioners appointed by the comptroller, and having it passed upon as a part of the original capital stock of the company, upon which its very existence is based, for it is not claimed in this case that the receiver has any greater legal rights than the company had. The company had no right to reduce or surrender the note, and as to the receiver, it furnishes a valid cause of action.

VI. The evidence that the note was a capital stock note, was undisputed, and it was the duty of the court to direct a verdict for the plaintiff. It is the duty of the court to direct a verdict where one the other way would be set

aside as against evidence. (15 *N. Y. R.*, 524 ; 18 *id.*, 425 ; 1 *Wend.*, 376 ; 28 *Barb.*, 654 ; 3 *id.*, 360.)

But if there were any questions of fact which might have been submitted to the jury, defendant's counsel should have called the attention of the court to the precise questions he desired to have them pass upon, and requested that they be submitted. ( *Winchell* agt. *Hicks*, 18 *N. Y. R.*, 558 ; *Dows* agt. *Rush*, 28 *Barb.*, 180.)

VII. The plaintiff was properly and legally appointed receiver. (*Bangs* agt. *Duckinfield*, 18 *N. Y. R.*, 592 ; *Tuck. erman* agt. *Brown*, 11 *Abb. R.*, 389.)

By the court, BACON, Justice. It would, I think, be a reproach upon the law, if the defence in this case should be sustained by the courts. It would demonstrate that the machinery by which was originated the brood of mutual insurance companies that have overrun this state like the frogs that infested Egypt, was more of a sham than it has heretofore been supposed to be. An agent of certain persons who contemplate the organization of such a company, solicits a party to give his note for $1,000, which is to be used as a part of the $100,000 of capital notes which are to be exhibited to the commissioners, on which they are authorized to give their certificate, and this on the representation and agreement that he shall not be assessed upon the note, and that it shall be returned to him within a year. And after the company is organized, a committee first reduce it to $50, and then the board return the note, without any assessment having ever been made upon it, or any portion of it whatever having been paid. Such an agreement by the authorized agent of a company formally organized, would be totally void as a fraud upon the public and upon the law ; and the act by which the company subsequently attempt to ratify and carry out this agreement, is equally invalid. The statement of such a case carries its own solution with it ; and no authority carefully con-

sidered, and its facts understood, can be found which will maintain a defence such as the proof in this case exhibits.

It would be a waste of time to go over the argument, which shows the utter baselessness of the grounds on which the defendant seeks to avoid a recovery in this suit. That has already been done in the case of *Tuckerman* agt. *Brown*, decided at the general term in the sixth district, and reported in 11th *Abb.*, 389. The facts of that case cannot be distinguished from the one before us ; and both because it is a general term decision directly upon the point, and because we concur in the reasoning upon which it is upheld, we follow its authority. That case expressly holds that the surrender of the note, in pursuance of the agreement under which it was obtained, did not release the liability of the party who gave it to the corporation, and that the receiver of the company can maintain an action to recover upon it as a valid security for the benefit of the creditors of the insolvent corporation.

Judgment must be rendered for the plaintiff on the verdict, and the motion for a new trial denied, with costs.